United States District Court
Southern District of Texas

**ENTERED**

February 28, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | CRIMINAL NUMBER H-15-564-31 |
| v. | § | (CIVIL ACTION NO. H-23-0917) |
| | § | |
| JUAN ALBERT MENDEZ, | § | |
| | § | |
| Defendant-Petitioner. | § | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | CRIMINAL NUMBER H-22-155 |
| v. | § | (CIVIL ACTION NO. H-23-2790) |
| | § | |
| JUAN ALBERT MENDEZ, | § | |
| | § | |
| Defendant-Petitioner. | § | |

## MEMORANDUM OPINION AND ORDER

Juan Albert Mendez ("Petitioner") pleaded guilty in March of 2022 to conspiracy to commit racketeering activity and pleaded guilty in August of 2022 to conspiracy to possess with intent to distribute more than 5 kilograms of cocaine and more than 100 kilograms of marijuana.[1]  In accordance with the plea agreements

---

[1]Plea Agreement ("Racketeering Plea Agreement"), Criminal Number H-15-564-31, Docket Entry No. 1694, p. 1 ¶ 1; Plea Agreement ("Distribution Plea Agreement"), Criminal Number H-22-155, Docket Entry No. 16, p. 1 ¶ 1.  Except where otherwise specified, "Criminal Number" refers to a Southern District of Texas case number.  All page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

under Federal Rule of Criminal Procedure 11(c)(1)(C), the court sentenced Petitioner to 360 months in each case, to run concurrently.[2] Pending before the court are Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("Petitioner's § 2255 Motion (Racketeering)") (Criminal Number H-15-564, Docket Entry No. 1903) and Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("Petitioner's § 2255 Motion (Distribution)") (Criminal Number H-22-155, Docket Entry No. 22). For the reasons explained below, the motions will be denied.

## I.  **Background**

## A.  **Petitioner's Indictments, Guilty Pleas, and Sentences**

On September 23, 2015, a grand jury in the Northern District of Indiana charged Petitioner with possession with intent to distribute 1 kilogram or more of a substance containing heroin, 5 kilograms or more of a substance containing cocaine, and 100 kilograms or more of a substance containing marijuana ("the Distribution Indictment" or "the Distribution Case").[3]

---

[2]Judgment in a Criminal Case, Criminal Number H-15-564-31, Docket Entry No. 1716, p. 2; Judgment in a Criminal Case, Criminal Number H-22-155, Docket Entry No. 18, p. 2.

[3]Indictment ("Distribution Indictment"), United States District Court for the Northern District of Indiana, Criminal Number 1:15-cr-51, Docket Entry No. 1, p. 1.

On May 10, 2018, a grand jury in the Southern District of Texas charged Petitioner as part of a twenty-eight count Third Superseding Indictment ("the Racketeering Indictment" or "the Racketeering Case") involving a drug distribution organization known as the Tri-City Bombers ("the Enterprise").[4] The Racketeering Indictment alleged that Petitioner was an associate of the Enterprise and was "involved in the trafficking of controlled substances and in the commission of violent crimes."[5] The Racketeering Indictment alleged that Petitioner "recruited the Enterprise to commit murders and attempted murders of individuals that he suspected stole controlled substances from him and drug trafficking organizations."[6] The Racketeering Indictment charged Petitioner with four counts, including conspiracy to participate in racketeering activity (Count One), attempted murder in aid of racketeering (Count Eighteen), murder in aid of racketeering (Count Nineteen), and kidnapping (Count Twenty).[7]

Petitioner appeared for rearraignment in the Racketeering Case on March 14, 2022, along with codefendants Margil Reyna, Jr., Jose Rolando Gonzalez, Ramon De La Cerda, and Salomon Robles.[8]

---

[4]Racketeering Indictment, Criminal Number H-15-564, Docket Entry No. 837, p. 2 ¶¶ 1-2.

[5]Id. at 9 ¶ 14.

[6]Id.

[7]Id. at 2 ¶ 1, pp. 9-10 ¶ 20, pp. 34-37.

[8]Re-Arraignment and Sentencing ("Racketeering Plea and Sentencing Transcript"), Criminal Number H-15-564, Docket Entry No. 1864, p. 1.

Petitioner declared his intent to plead guilty to Count One, conspiracy to participate in racketeering activity.[9] Petitioner pleaded guilty pursuant to the Racketeering Plea Agreement. Under the Racketeering Plea Agreement, Petitioner and the Government stipulated that the appropriate sentence was 360 months in prison and five years of supervised release.[10] They requested that the Distribution Case be transferred to the Southern District of Texas and stated that it would be resolved by a plea agreement stipulating to a sentence of 360 months, to run concurrently with the racketeering sentence.[11] In addition, Indiana state prosecutors communicated that they would not pursue two potential murder charges against Petitioner if he pleaded guilty to Count One of the Texas Indictment.[12]

Before accepting Petitioner's guilty plea, the court informed Petitioner that "[i]t is very important that you listen carefully to all of my questions, and that you answer all of my questions truthfully and completely" because Petitioner "could be charged with a separate crime of perjury" for an untrue answer and because

---

[9]Id. at 6 lines 10-17.

[10]Racketeering Plea Agreement, Criminal Number H-15-564, Docket Entry No. Docket Entry No. 1694, p. 1 ¶ 1, p. 2 ¶ 3.

[11]Id. at 3 ¶ 6(c); Racketeering Plea and Sentencing Transcript, Criminal Number H-15-564, Docket Entry No. 1864, p. 28 lines 19-25, p. 29 lines 1-20.

[12]Racketeering Plea and Sentencing Transcript, Criminal Number H-15-564, Docket Entry No. 1864, p. 30 lines 9-25, p. 31 lines 1-13.

the court must make findings based on Petitioner's answers to accept his guilty plea.[13] Petitioner confirmed that he understood.[14]

Petitioner stated that he had talked with his lawyer, George Murphy, about the case "[m]any, many times."[15] Petitioner confirmed that Murphy discussed with him the charges and what the Government would have to prove, that Murphy reviewed the Government's evidence with him, that Murphy reviewed the Racketeering Plea Agreement with him for about two hours and answered his questions, that he was fully satisfied with Murphy's counsel, and that Murphy did everything that Petitioner asked him to do.[16]

The court explained Petitioner's trial rights, and Petitioner confirmed that he knew he was giving up those rights by pleading guilty.[17]

The court explained the essential terms of the Racketeering Plea Agreement.[18]   Petitioner confirmed that the court had accurately described his plea agreement and that, aside from the Indiana prosecutors' promise to not pursue charges, he had no other

_____

[13]Racketeering Plea and Sentencing Transcript, Criminal Number H-15-564, Docket Entry No. 1864, p. 7 lines 7-14, 21-25, p. 8 line 1.

[14]Id. at 7 lines 15, 20, p. 8 lines 2, 7.

[15]Id. at 22 lines 7-9.

[16]Id. lines 12-25, p. 23 lines 1-19.

[17]Id. at 23 lines 22-25, p. 25 lines 1-16.

[18]Id. at 26-28.

agreements with the Government in connection with his guilty plea.[19]
Petitioner confirmed that nobody had threatened him or forced him
to plead guilty.[20]

The court discussed the factual basis set out in the
Racketeering Plea Agreement. Petitioner confirmed that the factual
basis is true and that he did everything described.[21]   In
particular, Petitioner confirmed that he directed codefendants to
kill Rosa Gonzalez because she failed to pay for a load of drugs,
that he directed codefendants to kidnap Juan Gonzalez-Gomez, that
he directed codefendant De La Cerda to chase and kill Gonzalez-
Gomez, and that he directed codefendants to travel to Indiana to
kill two people.[22]   Petitioner then entered a plea of guilty, and
the court found that the guilty plea was a knowing and voluntary
plea supported by an independent basis in fact.[23]   The court
accepted Petitioner's plea and adjudged him guilty.[24]   Pursuant to
the parties' Rule 11(c)(1)(C) agreement, the court sentenced
Petitioner to 360 months in prison and five years of supervised
release.[25]

---

[19]Id. at 33 lines 16-24.

[20]Id. line 25, p. 34 lines 1-2.

[21]Id. at 44 lines 22-25, p. 45 lines 1-20.

[22]Id. at 45 lines 21-25, p. 46 lines 19-25, p. 47 lines 1,
6-13, p. 48 lines 6-10.

[23]Id. at 48 lines 15-17, 22-25, p. 49 lines 1-2.

[24]Id. at 49 lines 2-3.

[25]Id. at 61 lines 14-25, p. 62 lines 1-3.

The Distribution Case was transferred to this court on March 17, 2022.[26] Petitioner appeared for rearraignment on August 5, 2022.[27] Petitioner confirmed that he was knowingly waiving his trial rights, confirmed that he was satisfied with Murphy's advice and counsel, and confirmed that nobody had threatened him or forced him to plead guilty.[28] Petitioner entered a plea of guilty pursuant to the Distribution Plea Agreement.[29] Based on the parties' Rule 11(c)(1)(C) agreement, the court sentenced Petitioner to 360 months in prison and five years of supervised release, to run concurrently with his racketeering sentence.[30]

## B.    Petitioner's § 2255 Motions

Petitioner timely filed his § 2255 Motion (Racketeering) and § 2255 Motion (Distribution).    The Motions treat the two plea

---

[26]Consent to Transfer of Case for Plea and Sentence, Criminal Number H-22-155, Docket Entry No. 1, p. 1.

[27]Re-Arraignment Hearing Official Reporter's Transcript of Proceedings ("Distribution Plea and Sentencing Transcript"), Criminal Number H-22-155, Docket Entry No. 20.

[28]Id. at 11 lines 14-25, p. 12 lines 1-9, 12-14, p. 16 lines 17-19.

[29]Id. at 18 lines 13-18.    The Distribution Plea Agreement states that Petitioner agreed to plead guilty to conspiracy to possess with intent to distribute more than 5 kilograms of cocaine and more than 100 kilograms of marijuana.    Distribution Plea Agreement, Criminal Number H-22-155, Docket Entry No. 16, p. 1 ¶ 1. There was no apparent disposition of the Distribution Indictment's allegation that Petitioner conspired to possess with intent to distribute 1 kilogram or more of heroin.

[30]Distribution Plea and Sentencing Transcript, Criminal Number H-22-155, Docket Entry No. 20, p. 19 lines 10-22.

-7-

agreements as functionally part of one overall agreement with the Government.[31] Petitioner's § 2255 Motion (Distribution) adds a few factual allegations not included in the Petitioner's § 2255 Motion (Racketeering), but the Motions allege the same constitutional violations. Although Petitioner's arguments are formatted in a single ground for relief titled "Coerced guilty plea," Petitioner argues that his guilty pleas were coerced, that the Government improperly offered a joint plea deal, and that his lawyer was ineffective and had a conflict of interest.[32] With respect to coercion, Petitioner alleges:

> My plea of guilty was not voluntary. An organized criminal gang was threatening me and my family with physical harm or death if I did not falsely accept guilt . . . I fell into an untenable position by threat of life in prison and violence. I would jeopardize my family in Mexico . . . It was all or nothing . . .

---

[31]This understanding appears consistent with the record. The requested transfer of the Indiana case was a term of the Racketeering Plea Agreement, and the parties both confirmed at the racketeering rearraignment that Petitioner was going to enter a Rule 11(c)(1)(C) plea in the Indiana case, that the agreed prison sentence would be 360 months, and that the prison sentences would run concurrently. Racketeering Plea Agreement, Criminal Number H-15-564, Docket Entry No. 1694; Racketeering Plea and Sentencing Transcript, Criminal Number H-15-564, Docket Entry No. 1864, p. 28 lines 15-25, p. 29 lines 1-20. If the court found one of Petitioner's claims to be meritorious, the question would arise whether Petitioner would be entitled to relief in both cases based on the connection between the pleas. But because the court finds no merit in Petitioner's claims, the court need not address this issue.

[32]Petitioner's § 2255 Motion (Racketeering), Criminal Number H-15-564, Docket Entry No. 1903, pp. 5, 14; Petitioner's § 2255 Motion (Distribution), Criminal Number H-22-155, Docket Entry No. 22, pp. 5, 14. The court need not liberally construe the filings of a counseled party, but no liberal construction is required to discern Petitioner's multiple arguments.

> [Murphy] sided with the government to hurry a plea and
> used threats to coerce a guilty plea to close my case
> . . . On March 14, 2022, [Petitioner], Jose Rolando
> Gonzalez, Ramon De La Cerda, Salomon Robles and Margil
> Reyna were re-arraigned and sentenced to 360 months.
> Before the re-arraignment AUSA Anibal Alaniz and [C]asey
> M[a]cDonald, all five defendants and their lawyers were
> present.  AUSA Anibal Alaniz stated to us, "if all of
> you don't agree to the 30 years, all of you have to go
> to trial."  Mr. Alaniz further stated, "it is a
> universal plea deal, if you don't all plea, everyone
> goes to trial and it's an automatic life sentence."[]
> Some of us wanted a plea and others did not but we all
> felt pressured to enter the plea because it was a
> universal plea deal. . . . In [Petitioner]'s case a
> joint plea offer put the gang member codefendants in a
> position of compelling [Petitioner] with threats of
> violence to himself and his family.  They wanted to
> accept the 30-year offer and they were willing to do
> anything to make sure they got it.  [Petitioner] was
> without fault in the case, but his survival depended on
> him taking the plea.  His defense attorney advised him
> accordingly.[33]

With respect to Murphy's performance and loyalty, Petitioner

alleges:

> [Murphy] did not protect me from this involuntary and
> false guilty plea.  He would not assist me on making
> bond, so I remained at greater risk from the gang while
> in jail.  He represented gang members whose interests
> were for me to take the blame.  He did not investigate
> or raise exculpatory evidence that would have given me
> a basis to explain why the plea was involuntary and
> false. . . . [Murphy] told me not to say anything to the
> judge of my innocence or threats that were being made
> against my family and me. . . . I was never given the
> opportunity to review my discovery with [Murphy].  He
> sent his daughter who had no knowledge or answers to any
> of my questions.  I sent a whole page of questions to
> [Murphy] that were never investigated.  I believe COVID
> had a great impact on [Murphy] not investigating my
> case.  He sided with the government to hurry a plea and
> used threats to coerce a guilty plea to close my case.
> I believe and swear to God that the threats by the

---

[33]Petitioner's § 2255 Motion (Distribution), Criminal Number
H-22-155, Docket Entry No. 22, p. 5, 14.

organized crime gang, repeated by [Murphy], coerced me
to plea and the lack of investigation by [Murphy] and
the failure of the Government to produce all
codefendants statements[] resulted in a much longer
sentence. . . . My plea was not voluntary I adamantly
told [Murphy]. He kept saying you will get life in
prison. Don't say anything to the Judge. We were all
coerced by the criminal organization.[34]

## C. De La Cerda's Affidavit

Petitioner attaches the Affidavit of codefendant Ramon De La

Cerda, which states in full:

I had only seen [Petitioner] a couple of times
before being arrested in January 2018. Concerning the
case from McAllen in 2014, I can say [Petitioner] did
not tell me to do anything to the individual who died
that day in the alley. The only reason I stated
anything in court was because my lawyer told me that I
had to say exactly what was on the paper to get the plea
of 30 years, otherwise the judge would not accept the
deal. [Petitioner] did not, at any time, tell me or
anyone else to my knowledge to do anything. I found
myself in a situation where I had to make a quick
decision and felt I was in danger and acted. I'm sorry
[Petitioner] got mixed up [in] this conspiracy, being
that [Petitioner] had no say in the groups' actions.

Hopefully this can help [Petitioner].[35]

## D. The Government's Responses and Petitioner's Replies

The Government timely responded to Petitioner's § 2255

motions.[36] The Government argues that Petitioner's motions should

---

[34]Id.

[35]Affidavit, Exhibit A to Juan Alberto Mendez Reply to the
Government Memorandum in Opposition to Petitioner's 28 U.S.C.
§ 2255 Motion ("Petitioner's Reply (Distribution)"), Criminal
Number H-22-155, Docket Entry No. 27-1.

[36]United States' Memorandum in Opposition to Petitioner's 28
U.S.C. § 2255 Motion ("Government's Racketeering Response"),
(continued...)

-10-

be denied because his allegations are contradicted by the record, conclusory, and meritless.[37] The Government argues that no evidentiary hearing is necessary because Petitioner has failed to provide independent support for his allegations.[38]

Petitioner timely replied to the Government's responses.[39] Petitioner argues that the court should not rely on the record because the record may be tainted by coercion, that an evidentiary hearing is necessary to evaluate the allegations against Murphy, and that a joint plea offer was inappropriate in this case because of the high likelihood of coercion.[40]

## II. **Legal Standard**

28 U.S.C. § 2255(a) states that a prisoner sentenced by a federal court may move that court "to vacate, set aside or correct

---

[36](...continued)
Criminal Number H-15-564, Docket Entry No. 1916; United States' Memorandum in Opposition to Petitioner's 28 U.S.C. § 2255 Motion ("Government's Distribution Response"), Criminal Number H-22-155, Docket Entry No. 26.

[37]Government's Racketeering Response, Criminal Number H-15-564, Docket Entry No. 1916, p. 1; Government's Distribution Response, Criminal Number H-22-155, Docket Entry No. 26, p. 1.

[38]Government's Racketeering Response, Criminal Number H-15-564, Docket Entry No. 1916, pp. 18-19; Government's Distribution Response, Criminal Number H-22-155, Docket Entry No. 26, p. 16.

[39]Juan Alberto Mendez Reply to the Government Memorandum in Opposition to Petitioner's 28 U.S.C. § 2255 Motion ("Petitioner's Reply (Racketeering)"), Criminal Number H-15-564, Docket Entry No. 1920; Petitioner's Reply (Distribution), Criminal Number H-22-155, Docket Entry No. 27.

[40]Petitioner's Reply (Racketeering), Criminal Number H-15-564, Docket Entry No. 1920, pp. 1-2; Petitioner's Reply (Distribution), Criminal Number H-22-155, Docket Entry No. 27, pp. 1-2.

-11-

the sentence" "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." "A defendant can challenge a final conviction, but only on issues of constitutional or jurisdictional magnitude." <u>United States v. Willis,</u> 273 F.3d 592, 595 (5th Cir. 2001). "[A]fter a conviction and exhaustion or waiver of any right to appeal, [the court] is entitled to presume that the defendant stands fairly and finally convicted." <u>Id.</u> "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." <u>United States v. Frady,</u> 102 S. Ct. 1584, 1593 (1982).

A court must grant an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Fifth Circuit has held that a § 2255 evidentiary hearing is required only if a petitioner produces "independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties." <u>United States v. Cervantes,</u> 132 F.3d 1106, 1110 (5th Cir. 1998); <u>United States v. McDaniels,</u> 907 F.3d 366, 370 (5th Cir. 2018).

## III.  <u>Analysis</u>

Petitioner argues that his guilty plea was coerced, that the Government engaged in prosecutorial misconduct, and that Murphy was

ineffective and conflicted. The Government argues that each of these arguments fails and that no evidentiary hearing is necessary.

## A. Coercion of Petitioner's Guilty Plea

Petitioner alleges that a criminal gang (and Murphy) coerced him to plead guilty by making violent threats to himself and his family. "It is elementary that a coerced plea is open to collateral attack." Fontaine v. United States, 93 S. Ct. 1461, 1462 (1973). A plea may be invalid if it was produced by "actual or threatened physical harm, promises to cease improper harassment, [] bribes . . . [or] mental coercion that overcame [the defendant's] free will." See Jones v. Estelle, 584 F.2d 687, 689-90 (5th Cir. 1978); Brady v. United States, 90 S. Ct. 1463, 1470 (1970). Petitioner must show that his plea was a result of threats "overbearing [his] will . . . or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel." Matthew v. Johnson, 201 F.3d 353, 365 (5th Cir. 2000).

Petitioner's allegation of coercion is contrary to his sworn rearraignment testimony that nobody had threatened him or forced him to plead guilty. "A defendant's solemn declarations in court carry a strong presumption of truth." Lott v. Hargett, 80 F.3d 161, 168 (5th Cir. 1996). To warrant an evidentiary hearing, Petitioner must provide third-party affidavits or other "independent indicia" that coercion occurred. De La Cerda's Affidavit contradicts his rearraignment testimony incriminating

-13-

Petitioner, but it does not state that Petitioner was subject to any threats.  Moreover, the Affidavit does not corroborate Petitioner's allegation that the plea offer was contingent on all five defendants' guilty pleas.

Even taking as true that the plea offer was joint, it would only show that Petitioner's codefendants could have had an incentive to coerce him.  Petitioner has not offered any affidavit or other support suggesting that his codefendants acted on that incentive.[41]

Petitioner's own allegations of coercion also lack important details.  Petitioner does not name which codefendants or gang members communicated the threats, except stating that Murphy repeated them.  Nor does Petitioner explain when, where, or how the alleged threats were communicated to him.  Because Petitioner's allegations of coercion have no independent indicia of truth and are conclusory, Petitioner's § 2255 Motions will be denied as to his coercion claim, and the court will not grant an evidentiary hearing.

## B.   Prosecutorial Misconduct - Joint Plea

Petitioner argues that it was improper for the Government to make a joint plea offer because of the high likelihood of

---

[41]To the extent Petitioner argues that the joint plea offer was itself coercive independent of whether it induced threats, the court is not persuaded.  To obtain relief, Petitioner must show he was "rendered unable to weigh rationally his options with the help of counsel."  Matthew, 201 F.3d at 365.  This high bar would not be met by the mere knowledge that codefendants, even violent ones, stood to gain from Petitioner's guilty plea.

coercion.[42]   The Government responds that the plea offer was proper and that the Petitioner's guilty plea was voluntary.[43]

"Prosecutorial misconduct implicates due process concerns." Foy v. Donnelly, 959 F.2d 1307, 1316 (5th Cir. 1992).  Courts apply "a two-step analysis to charges of prosecutorial misconduct," asking first, whether the prosecutor's actions were improper and, second, whether the actions "prejudiced the defendant's substantive rights."  See United States v. Duffaut, 314 F.3d 203, 210 (5th Cir. 2002).[44]   The Fifth Circuit has held that "defendants do not have a right to plea bargain individually."  United States v. Rice, 607 F.3d 133, 144 (5th Cir. 2010).  In Rice the government offered two defendants a joint plea deal.  Id.  One defendant expressed a willingness to accept the deal, but the other defendant refused. Id.  The government declined to offer the same terms to the willing

---

[42]Petitioner's Distribution Reply, Criminal Number H-22-155, Docket Entry No. 27, p. 2 ("AUSA Alaniz . . . should have recognized the difference and the high risk that some defendants would have to coerce others into a plea."); see also Petitioner's § 2255 Motion (Distribution), Criminal Number H-22-155, Docket Entry No. 22, p. 14.

[43]Government's Distribution Response, Criminal Number H-15-564, Docket Entry No. 1916, pp. 15-16.

[44]Out of an abundance of caution and because the Government construes Petitioner's challenge as raising both a coercion claim and a prosecutorial-misconduct claim, the court analyzes the challenge under both frameworks.  But the court notes that the prosecutorial misconduct framework may be superfluous for this kind of challenge.  To satisfy the prejudice prong of a prosecutorial misconduct claim, a petitioner would need to show that the joint offer caused codefendants to make threats that rendered his plea involuntary or that the offer itself somehow overcame his free will.  But a petitioner able to make that showing would be entitled to relief under a coercion claim.

defendant on an individual basis, and the defendants were both convicted at trial. Id. On appeal, the willing defendant argued that the government violated due process by conditioning her plea offer on her codefendant's plea. Id. The Fifth Circuit disagreed, emphasizing that there is no constitutional right to a plea offer and that the defendant "offer[ed] no reason why the government should be prohibited from conditioning a plea offer on a joint plea." Id.

Petitioner acknowledges the holding in Rice but argues that it did not address the scenario of a joint plea inducing threats by a codefendant.[45]   The court agrees that Rice cannot be read as universally blessing joint plea offers.  Rice held that a joint plea offer was permissible under the facts of that case.  Moreover, in this case Petitioner is complaining that a joint plea offer caused coercion of his guilty plea — not that a codefendant's refusal prevented him from getting the benefit of a plea deal. Rice does not foreclose the possibility that there may be cases in which a joint plea offer is improper.  But the parties cite no other cases addressing joint plea offers.  In the absence of authority, the court is not persuaded that a joint plea offer was improper in this case.

Moreover, to obtain relief Petitioner would have to show that the joint plea offer "prejudiced his substantial rights." Duffaut,

---

[45]Petitioner's § 2255 Motion (Distribution), Criminal Number H-22-155, Docket Entry No. 22, p. 14; Petitioner's Distribution Reply, Criminal Number H-22-155, Docket Entry No. 27, p. 2.

314 F.3d at 210.  As explained earlier, Petitioner has not shown that his plea was coerced.  His only independent support — De La Cerda's Affidavit — does not corroborate Petitioner's allegations that codefendants and Murphy threatened him.  Petitioner's claim of prosecutorial misconduct therefore fails, and the court will not grant an evidentiary hearing.

## C.    Ineffective Assistance of Counsel

Petitioner raises two ineffective assistance of counsel claims — that Murphy's performance was deficient and that Murphy had a conflict of interest.[46]

### 1.    Deficient Performance

Petitioner alleges that Murphy failed to adequately investigate his case and answer his questions.  "'[A] claim for ineffective assistance of counsel is properly made in a § 2255 motion because it raises an issue of constitutional magnitude and, as a general rule, cannot be raised on direct appeal.'" United States v. Conley, 349 F.3d 837, 839 n.1 (5th Cir. 2003).  To prevail on an ineffective assistance of counsel claim, a convicted defendant must show (1) that defense counsel's performance was deficient and (2) that the deficient performance prejudiced the defendant.  Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984).

---

[46]Petitioner's § 2255 Motion (Racketeering), Criminal Number H-15-564, Docket Entry No. 1903, pp. 5, 14; Petitioner's § 2255 Motion (Distribution), Criminal Number H-22-155, Docket Entry No. 22, pp. 5, 14.

A counsel's performance is deficient if he "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. To show prejudice in the guilty plea context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 106 S. Ct. 366, 370 (1985).

Petitioner's ineffective assistance claim fails because he provides no support for his allegations regarding Murphy's performance. De La Cerda's Affidavit makes no mention of Petitioner's representation.

Petitioner's allegations regarding Murphy's performance are also conclusory. Petitioner alleges that Murphy failed to assist him with making bond but does not state what additional steps Murphy should have taken.[47] Petitioner alleges that Murphy failed to investigate his case but does not identify any specific issues. Petitioner alleges that Murphy failed to answer his questions but does not state what any of the questions were or even what aspects of the case they relate to. Petitioner's ineffective assistance of counsel claim fails, and the court will not grant an evidentiary hearing.

---

[47]Murphy was present at Petitioner's detention hearing. Minute Entry for Proceedings Held Before Magistrate Judge Frances H Stacy, Criminal Number H-15-564, minute entry on August 14, 2019. Moreover Petitioner's charges raised a legal presumption that pretrial detention was necessary. See Order of Detention Pending Trial, Criminal Number H-15-564, Docket Entry No. 1113, p. 3. Petitioner has cited no facts that Murphy could have used to overcome that presumption.

-18-

2.  Conflicted Counsel

Petitioner alleges that Murphy had a conflict of interest because he was representing gang members adverse to Petitioner.[48] A defense counsel's conflict of interest may violate the Sixth Amendment right to assistance of counsel. Glasser v. United States, 62 S. Ct. 457, 467-68 (1942). A defendant who made no objection to the trial court regarding the conflict may nevertheless challenge such a conflict on collateral attack. Cuyler v. Sullivan, 100 S. Ct. 1708, 1718 (1980). To warrant relief, the defendant must show that "an actual conflict of interest adversely affected his lawyer's performance." Id. If the defendant makes such a showing, he "need not demonstrate prejudice in order to obtain relief." Id. at 1719.

Petitioner does not identify any interested gang member that Murphy represented and offers no support for his allegation that Murphy's defense was affected. Moreover, the record does not show that Murphy represented any of Petitioner's codefendants. Each defendant was represented by different counsel. Petitioner's claim of conflicted counsel therefore fails, and the court will not grant an evidentiary hearing.

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that a district court "must issue or deny a certificate of

---

[48]Petitioner's § 2255 Motion (Racketeering), Criminal Number H-15-564, Docket Entry No. 1903, p. 5; Petitioner's § 2255 Motion (Distribution), Criminal Number H-22-155, Docket Entry No. 22, p. 5.

appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue unless that applicant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires an applicant to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under that controlling standard this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003) (internal quotation marks omitted).

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). The court concludes that reasonable jurists could not find any of Petitioner's claims meritorious, so a certificate of appealability will be denied as to both motions.

## V.   **Conclusion and Order**

Petitioner's claims of coercion, prosecutorial misconduct, and ineffective assistance of counsel fail. Moreover, the record conclusively shows that Petitioner is not entitled to any relief,

-20-

so the court need not grant an evidentiary hearing.  Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Criminal Number H-15-564, Docket Entry No. 1903) and Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Criminal Number H-22-155, Docket Entry No. 22) are therefore **DENIED**.  Petitioner's requests for evidentiary hearings are **DENIED**.  Because the court concludes that reasonable jurist could not find any of Petitioner's claims meritorious, a certificate of appealability is **DENIED** as to both motions.

**SIGNED** at Houston, Texas, on this 28th day of February, 2024.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-21-